CHAISSON, J.
*756 Defendant, Antonio Cuza, appeals his conviction and sentence for aggravated battery. For the reasons that follow, we affirm defendant's conviction and sentence.
PROCEDURAL HISTORY
On July 8, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant with aggravated battery, in violation of La. R.S. 14:34. At his arraignment, defendant pled not guilty. The matter proceeded to trial before a six-person jury on October 17, 2017.[1] After considering the evidence presented, the jury, on October 18, 2017, found defendant guilty as charged.
On November 8, 2017, defendant filed a motion for new trial, arguing that the verdict was contrary to the law and evidence presented at his trial, and a motion for post-verdict judgment of acquittal, requesting the court to set aside the verdict or enter a verdict of a lesser included offense. On November 9, 2017, the trial judge heard and denied these two motions and thereafter sentenced defendant to ten years imprisonment at hard labor with credit for time served.[2]
Defendant now appeals. His appointed appellate counsel has filed a brief challenging the sufficiency of the evidence used to convict defendant of aggravated battery. In addition, defendant has filed a pro se brief, in which he alleges that the evidence was insufficient to support his conviction and that the trial court erred in denying the defense request to conduct recross examination of one of the State's witnesses. For the reasons that follow, we find no merit to these arguments.
FACTS
On March 15, 2015, Abraham Ezekiel Montenegro-Sanchez allowed an upstairs neighbor access to his apartment and yard for a child's birthday party. When Mr. Montenegro arrived home from work that day at about 5:00 p.m., he joined in the party and began to drink with the other guests. It is undisputed that during the party, an altercation occurred between Mr. Montenegro and defendant, which resulted in the stabbing of Mr. Montenegro. However, Mr. Montenegro and defendant presented different versions of events as to the circumstances leading up to the stabbing.
According to Mr. Montenegro, at one point during the party, he observed defendant pulling Elba Monroy Mojica's hair and hitting her body with his fist.[3] Upon seeing this, Mr. Montenegro and his roommate, *757 Joseluis Castellon, went over and grabbed defendant so he would let her go. Defendant told them to let him go and cursed at them. They released him, and defendant said that he would see them soon. Mr. Montenegro went inside his apartment with some friends and continued drinking, and approximately ten minutes later, defendant returned and was holding two knives. Mr. Montenegro grabbed a plastic bar stool to try to defend himself, but defendant was able to stab Mr. Montenegro on the left side of his back. This version of events was corroborated at trial by Mr. Montenegro's roommate, Mr. Castellon.
The defense, however, presented a different scenario through the testimony of Ms. Mojica, defendant's wife, and Osmel Arencibia-Hernandez, a guest at the party. According to these witnesses, Ms. Mojica and defendant left the party and went to their upstairs apartment for a little while. When she came back down alone, Mr. Montenegro tried to kiss her. Ms. Mojica told Mr. Montenegro "no" and pushed him away; however, he persisted in his attempt. Defendant then proceeded down the stairs, saw what was happening, and told Mr. Montenegro to stop bothering her. During this exchange, Mr. Montenegro hit defendant, and a struggle ensued. Two of Mr. Montenegro's friends joined in the fight, threw defendant on the ground, and kicked him. As this was going on, Mr. Montenegro momentarily left, then returned with a knife, and swung it at defendant, resulting in a cut to defendant's hand. According to Mr. Hernandez, the two men continued to struggle over the knife, falling to the ground at the base of the stairs, and both were covered in blood.
Hugo Galvez, an occupant of the apartment complex who was present at the time of the stabbing, called 9-1-1 and then waited in the parking lot for the police to arrive. When Deputy Richard Wilson of the Jefferson Parish Sheriff's Office arrived, Mr. Galvez relayed that his friend had been stabbed and identified defendant as the perpetrator. Deputy Wilson thereafter detained defendant, who had an open and bleeding cut on his hand. Both defendant and Mr. Montenegro were transported to the hospital for treatment of their injuries.
SUFFICIENCY OF THE EVIDENCE
On appeal, defendant challenges the sufficiency of the evidence used to convict him of aggravated battery. Defendant contends that the evidence presented at trial established that he acted in self-defense, and he further questions the credibility determinations made by the jury.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002) ; State v. Havies , 16-635 (La. App. 5 Cir. 3/15/17), 215 So.3d 457, 462.
The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence.
*758 State v. Caffrey , 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied , 09-1305 (La. 2/5/10), 27 So.3d 297. As a result, under the Jackson standard, a review of a criminal conviction record for sufficiency of the evidence does not require the reviewing court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones , 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. State v. Caffrey , supra . Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Bailey , 04-85 (La. App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied , 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied , 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon , 07-915 (La. App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied , 08-987 (La. 1/30/09), 999 So.2d 745.
In the present case, defendant was convicted of aggravated battery, in violation of La. R.S. 14:34. To support a conviction of aggravated battery, the State must prove: 1) the defendant intentionally used force or violence against the victim; 2) the force or violence was inflicted with a dangerous weapon; and 3) the dangerous weapon was used in a manner likely to cause death or great bodily harm. State v. Havies , 215 So.3d at 462. Defendant does not challenge these essential statutory elements, nor does he contest his identification as the perpetrator. Rather, defendant asserts that he established by a preponderance of the evidence that the battery committed upon Mr. Montenegro was in self-defense, and his conviction of aggravated battery should be set aside. He suggests that the force he employed was necessary and reasonable as Mr. Montenegro attempted to slash his face with a knife.
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:19(A). The aggressor or the person who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
This Court has repeatedly held that when self-defense or the defense of another is claimed by the defendant in a non-homicide case, the defendant has the burden of proof by a preponderance of the evidence that his actions were in self-defense or in defense of others. State v. Howard , 15-473 (La. App. 5 Cir. 12/9/15), 182 So.3d 360, 363 ; State v. Baham , 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 567, writ denied , 15-40 (La. 3/24/16), 190 So.3d 1189 ; State v. Bannister , 11-602 (La. App. 5 Cir. 2/14/12), 88 So.3d 628, 635, writ denied , 12-628 (La. 6/15/12), 90 So.3d 1060.
In the present case, the jury was presented with two different versions of events regarding the circumstances of the stabbing. Mr. Montenegro and his roommate, *759 Mr. Castellon, testified that while the birthday party was going on, they observed defendant hitting Ms. Mojica and pulling her hair. Upon seeing this, the two men grabbed defendant to make him stop. According to Mr. Montenegro, defendant told them to let him go, cursed at them, and said he would see them soon. Defendant returned about ten minutes later holding two knives. Mr. Montenegro turned around and grabbed a bar stool to defend himself, but defendant still managed to stab him once in the left side of his back.
Hugo Galvez also testified at trial and corroborated Mr. Montenegro's version of events. Mr. Galvez acknowledged that he was not present during the initial altercation Mr. Montenegro had with defendant; however, he maintained that Mr. Montenegro called him while he was in his apartment and told him that he had just gotten into a fight with defendant and had thrown him on the floor. After Mr. Montenegro relayed to Mr. Galvez that defendant said he was going to get something to kill him, Mr. Galvez proceeded to Mr. Montenegro's apartment. Although defendant was not there, he soon arrived with two knives in his hand and tried to stab Mr. Montenegro. Mr. Galvez provided that Mr. Montenegro tried to defend himself by holding up a stool with both hands, but defendant was able to stab Mr. Montenegro in the back.
In contrast to the testimony presented by the State, defendant presented his version of events indicating that he acted in self-defense against his aggressor, Mr. Montenegro. According to Ms. Mojica and Mr. Hernandez, Mr. Montenegro attempted to kiss Mrs. Mojica on the stairs as she was returning to the party from her apartment. Ms. Mojica told Mr. Montenegro "no" and pushed him away; however, he persisted in his attempt. Defendant then proceeded down the stairs, saw what was happening, and told Mr. Montenegro to stop bothering her. As the two men exchanged words, Mr. Montenegro charged at defendant and hit him, and a struggle ensued. Two of Mr. Montenegro's friends joined in the fight, threw defendant on the ground, and kicked him. As this was going on, Mr. Montenegro momentarily left, returned with a knife, and swung it at defendant, resulting in a cut to defendant's hand. According to Ms. Mojica, defendant's hand was injured when he put his hand out; however, according to Mr. Hernandez, Mr. Montenegro tried to cut defendant's face, and defendant received the cut on his hand when he tried to shield his face. In any event, the two men continued to struggle over the knife, falling to the ground at the base of the stairs, and both were covered in blood. Also, during Ms. Mojica's testimony, she denied that her husband was hitting her or being aggressive with her, and she further denied that Mr. Montenegro was trying to break up a fight.
In their briefs, both defendant and his appointed appellate counsel point out inconsistencies in the State's case and suggest that since defendant's case did not have such discrepancies, the jury should have made credibility determinations in his favor and found him not guilty.
We acknowledge that there were inconsistencies and/or confusion relating to where the stabbing occurred, whether Mr. Galvez was present at the party before the stabbing occurred, and which individuals spoke to Deputy Wilson after the incident. Further, there were inconsistencies between the information given at the time of the incident and the trial testimony. However, the jury was presented with these discrepancies, as well as the language barriers involved with some of the witnesses. In addition, the jurors heard the advantage Mr. Montenegro obtained by the occurrence of this incident. Specifically, at *760 the time of trial, Mr. Montenegro was in the process of obtaining a certain type of visa and admitted that he had no legal status in this country before the incident occurred.
Faced with the conflicting testimony presented by the parties, as well as any inconsistencies in the State's case, the jury found defendant guilty of aggravated battery. By returning the guilty verdict, the jury obviously rejected defendant's account of the events that led to the stabbing of Mr. Montenegro. The law is clear that the credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See Bailey , supra . It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Falcon , 06-798 (La. App. 5 Cir. 3/13/07), 956 So.2d 650, 657.
Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that a rational trier of fact could have determined that the State proved the essential elements of the crime beyond a reasonable doubt and that defendant did not prove by a preponderance of the evidence that the stabbing was done in self-defense. Accordingly, the arguments presented by defendant and his appointed appellate counsel relating to the sufficiency of the evidence are without merit.
DENIAL OF RIGHT TO RECROSS EXAMINATION
In his second pro se assignment of error, defendant contends that the trial court erred in denying defense counsel's request to recross examine Officer Wilson regarding testimony about defendant's position when he stabbed Mr. Montenegro.
On cross-examination, Deputy Wilson testified that when he spoke to Mr. Galvez at the scene of the incident, Mr. Galvez told him that Mr. Montenegro was stabbed from behind. Deputy Wilson further testified that when he spoke to Mr. Montenegro at the hospital, Mr. Montenegro told him that as he was talking to a guest, defendant came up behind him and stabbed him in the upper back area. Deputy Wilson also testified that Mr. Montenegro did not indicate that he was stabbed from the front. Further, when defense counsel asked Deputy Wilson if he thought it was possible that this stabbing came from the front, Deputy Wilson stated, "It was never indicated that the subject stabbed him from the front." Pursuant to further questioning by defense counsel, Deputy Wilson stated, "As they're telling me that side of the story that's what I'm hearing, he stabbed me from the back. Nobody ever said that he was stabbed - the person was standing in front of him and stabbed him in the back."
Thereafter, on redirect by the State, the following exchange occurred:
BY MR. RUSHTON:
Q. Yes. Deputy Wilson, when you spoke with Mr. Galvez, took a statement from him, did you record that statement in any way?
A. No. It was verbal.
Q. And, isn't it true that Mr. Galvez never told you that the victim was stabbed from behind?
A. He never stated that.
Q. And so you didn't reflect that in your report?
A. Write it in the report. Correct.
Q. So Mr. Galvez told you that his friend was stabbed in the back?
A. Correct.
Q. But he did not say from behind, did he?
A. Correct.
Q. And also the victim never stated he was stabbed from behind, is that right?
*761 A. Correct.
Q. He just said he was stabbed in the back?
A. Correct.
Q. He also didn't say he was stabbed from the front?
A. Correct.
Q. You didn't ask him from which direction the defendant stabbed?
A. No, I didn't.
Following the conclusion of redirect, defense counsel approached the bench and the following exchange occurred:
Defense counsel: [The State] just asked the officer if the man said that he was stabbed from behind. The way he asked the question he said, no. The report clearly says, he came up behind him and stabbed him in the back. The report says that. He indicated that he wrote down exactly what the man said. I should be able to question him one more time about that line if that is the truth. If that's correct or not.
The Court: I'm denying your request. It was beyond the scope of cross-examination.
Defense counsel: It wasn't beyond the scope, he mischaracterizes the testimony.
The Court: We can't go back and forth, back and forth.
Defense counsel: But it mischaracterizes the testimony, Judge.
The Court: Well, there was no objection to it while they questioned him.
The State: He had the statement in.
The Court: Request denied.
Defendant now contends that the trial court erred in denying defense counsel's request to recross examine Deputy Wilson, in violation of his constitutional right to confrontation. Defendant specifically wanted to recross Deputy Wilson regarding testimony about defendant's position when he stabbed Mr. Montenegro. He contends that the case hinged upon whether Mr. Montenegro was stabbed from the front or from behind by defendant, and the State's redirect examination of Deputy Wilson elicited a new matter on redirect about which he should have been allowed to question Deputy Wilson.
La. C.E. art. 611(D) provides for recross examination as follows:
Scope of redirect examination; recross examination. A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
Generally, the matter of permitting recross examination is in the sound discretion of the trial judge, and in the absence of some showing of an abuse of that discretion, and resulting prejudice, his ruling will not be disturbed on appeal. State v. Seals , 09-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 322, writ denied , 12-293 (La. 10/26/12), 99 So.3d 53, cert. denied , 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).
In the present case, we find no abuse of discretion in the trial court's denial of defense counsel's request to recross examine Deputy Wilson regarding defendant's position when he stabbed Mr. Montenegro. The State's redirect examination of Deputy Wilson did not cover a new matter but was only an extension of previous testimony elicited during cross-examination regarding the position of defendant at the time of the stabbing, and further questioning would have only belabored the point. In particular, defense counsel had already elicited testimony from Deputy Wilson regarding Mr. Montenegro being stabbed *762 from behind, and the State, in its redirect examination, was attempting to correct the impression made by Deputy Wilson that Mr. Montenegro was stabbed from behind. Further, defendant has failed to allege or show any prejudice was suffered as a result of being denied the right to recross the witness. Lastly, we note that defendant's constitutional right to confrontation was not violated as he had the opportunity to confront and cross-examine Deputy Wilson. Thus, we find no merit to this assigned error.
ERRORS PATENT REVIEW
We have also reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). Our review reveals no errors that require corrective action.
Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence.
AFFIRMED

The State filed a superseding bill of information additionally charging defendant with two counts of false swearing for purpose of violating public health or safety, in violation of La. R.S. 14:126.1. However, these two counts were not tried with the aggravated battery charge and are not part of the instant appeal.

It is noted that the State filed a bill of information pursuant to La. R.S. 15:529.1 seeking to have defendant adjudicated a multiple offender. After defendant stipulated to being a second felony offender, the trial court vacated his original sentence of ten years and imposed an enhanced sentence of twenty years imprisonment at hard labor. The habitual offender proceedings are not part of the instant appeal.

During his testimony, Mr. Montenegro testified that he saw defendant "fighting with the woman." At the time of the incident, Mr. Montenegro did not know the woman's name, but he recognized her face and knew that she lived with defendant in the apartment complex, although he did not know if they were married.